FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 20, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RAY E., | No. 1:17-cv-03113-MKD |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| | ECF Nos. 15, 23 |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for Summary Judgment. ECF Nos. 15, 23. The parties consented to proceed before a magistrate judge. ECF No. 8. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's Motion (ECF No. 15) and denies Defendant's Motion (ECF No. 23).

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner

considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On August 14, 2013, Plaintiff filed applications for Title II disability insurance benefits and Title XVI supplemental security income benefits, alleging an amended onset date of April 1, 2013. Tr. 47-48, 241-55. The applications were denied initially, Tr. 172-80, and again on reconsideration, Tr. 182-93. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on September 22, 2015. Tr. 38-87. On March 1, 2016, the ALJ denied Plaintiff's claim. Tr. 18-32.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since April 1, 2013. Tr. 21. At step two, the ALJ found Plaintiff has the following severe impairments: right shoulder

bursitis and joint arthrosis, degenerative joint disease of the right hip, degenerative disk disease of the lumbar spine, bilateral carpal tunnel syndrome, chronic pain syndrome, and depressive disorder. *Id.* At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 22. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [H]e cannot work above shoulder-level with his right upper extremity. He can otherwise frequently reach with his right upper extremity. He can frequently handle and finger bilaterally. He cannot crawl or climb. He can occasionally balance, stoop, kneel, and crouch. He should avoid concentrated exposure to vibration, extreme cold, and hazards. He can perform simple, routine tasks and can follow short, simple instructions. He can do work that needs little or no judgment and can perform simple duties that can be learned on the job in a short period. He requires a work environment with minimal supervisor contact [footnote omitted]. He can work in proximity to coworkers but not in a cooperative or team effort. He requires a work environment without public contact and that has no more than superficial interactions with co-workers.

Tr. 24.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 30. At step five, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as production assembler, hand packager, mail clerk, assembler, and document preparer. Tr. 31-32. The ALJ concluded was not under a disability, as defined in the Social Security Act, from April 1, 2013 through March 1, 2016, the date of the ALJ's decision. Tr. 32.

ORDER - 7

On May 2, 2017, the Appeals Council denied review of the ALJ's decision, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence; and

2. Whether the ALJ properly evaluated Plaintiff's symptom complaints. ECF No. 15 at 7.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff challenges the ALJ's treatment of the medical opinions of treating and examining providers David Lindgren, M.D., Rory Sumners, M.D., and Jeremiah Crank, M.D. ECF No. 15 at 19-20.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

ORDER - 8

*Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-831 (9th Cir. 1995)).

*1. Dr. Lindgren*

Dr. Lindgren, Plaintiff's treating physician, opined on March 26, 2015 that Plaintiff's carpal tunnel syndrome would cause marked impairments in Plaintiff's ability to lift, carry, handle, push, and pull; that Plaintiff's intervertebral disc disease would cause marked impairments in Plaintiff's ability to sit, stand, walk, lift, carry, handle, push, pull, reach, stoop, and crouch; that Plaintiff's right hip impairment would cause marked impairments in Plaintiff's ability to sit, stand, walk, lift, carry, handle, push, pull, reach, stoop, and crouch; that Plaintiff's right shoulder impairment would case marked impairments in Plaintiff's ability to sit, stand, walk, lift, carry, handle, push, pull, reach, stoop, and crouch; and that Plaintiff was unable to meet the demands of sedentary work. Tr. 609-10. On July 23, 2015, Dr. Lindgren opined Plaintiff would likely miss four or more days of work per month due to his pain symptoms. Tr. 614-15. The ALJ gave these opinions minimal weight. Tr. 28. Because Dr. Lindgren's opinions were contradicted by Dr. Hale, Tr. 143-44, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion. *Bayliss*, 427 F.3d at 1216.

*a. Ability to Work with Impairments*

The ALJ found Dr. Lindgren's opinion was inconsistent with Plaintiff's past ability to engage in gainful work. Tr. 28. Working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin v. Sullivan*, 966 F.2d

1255, 1258 (9th Cir. 1992). Here, the ALJ noted that Plaintiff attributed his impairments to injuries that occurred several years before the alleged onset date in 2013. Tr. 25. Plaintiff attributed his back and hip pain to a fall that occurred in 2000. *See* Tr. 355, 458, 557. Plaintiff also attributed his right shoulder pain to a fall that occurred in 2009. Tr. 625. The ALJ then observed that despite Plaintiff's injuries in 1999 and 2009, Plaintiff was gainfully employed[1] in 2003, 2004, 2008, 2010, and 2011.[2] Tr. 25; *see* Tr. 260.

The ALJ concluded that because Plaintiff was capable of working after his impairment-causing fall, Plaintiff was therefore capable of working with similar impairments during the relevant period in this case. Tr. 25. However, the ALJ identified no comparative evidence from before Plaintiff's alleged onset date to support the ALJ's finding that Plaintiff's physical condition during the time when he was capable of gainful employment was sufficiently similar to his physical condition during the alleged period of disability to support this comparison. *See*

---

[1] The vocational expert testified that Plaintiff's past work was classified as sedentary, light, and medium work as it was performed. Tr. 75.

[2] Plaintiff has a prior unfavorable disability determination that covers a period through March 14, 2012. Tr. 18. The beginning date of this period is not in the present record.

ORDER - 11

Tr. 22-30.  The Commissioner does not now identify any evidence to support this

conclusion.  ECF No. 23 at 5-6.  To the contrary, Plaintiff contends his

impairments worsened over time, which is supported by the record.  Here, the

record shows Plaintiff pursued increasingly intensive treatment with little relief

during the relevant period, indicating that Plaintiff's condition worsened with time.

*See, e.g.,* Tr. 397 (Plaintiff referred to orthopedic specialist for hip pain in October

2013); Tr. 373 (on December 5, 2013, Plaintiff reported physical therapy

aggravated his hip pain and that his pain increased after receiving pain-relieving

injections); Tr. 523 (Plaintiff referred for surgery on April 8, 2014); Tr. 417-18

(Plaintiff underwent hip surgery on September 3, 2014); Tr. 414 (Plaintiff reported

he continued to experience hip pain after surgery in September 2014); Tr. 632

(Plaintiff's response to hip surgery characterized as "without significant

improvement" in June 2015).  Additionally, Plaintiff's self-reports during this

period indicated Plaintiff experienced worsened pain over time.[3]  *See* Tr. 437 (on

_____

[3] The ALJ found Plaintiff's subjective symptom complaints were "not entirely

credible."  Tr. 25.  However, as discussed *infra*, the ALJ's evaluation of Plaintiff's

symptom testimony is not supported by substantial evidence, as it was based in

significant part on the ALJ's selective interpretation of the longitudinal medical

ORDER - 12

April 17, 2013, Plaintiff complained of "chronic right hip pain for years, worse lately"); Tr. 373 (on December 5, 2013, Plaintiff reported "intermittent issues with the right hip and leg [due to a fall 13 years ago] but these have gotten significantly worse over the last several months"); Tr. 513 (on October 23, 2014, Plaintiff reported progressively worsening right shoulder pain and weakness); Tr. 625 (on April 8, 2015, Plaintiff reported right shoulder pain with an onset date of six years ago, but reported recent worsening pain); Tr. 628 (May 14, 2015 follow up physical therapy appointment showed marked worsening in shoulder impairment). Although the ALJ concluded that there was no evidence to show Plaintiff's condition worsened between the time when Plaintiff was capable of working and the time after the alleged onset date, this finding was not supported by substantial evidence. Without supporting evidence, Plaintiff's ability to work between 2003 and 2011 does not bear on the relevant period of disability in this case. Accordingly, in this instance, Plaintiff's past ability to work did not provide a specific and legitimate reason, supported by substantial evidence, to discredit Dr. Lindgren's opinion.

_____

evidence. Tr. 25-27. Accordingly, the Court declines to similarly discredit Plaintiff's symptom testimony here.

ORDER - 13

*b. Consistency with Examination Findings*

The ALJ found Dr. Lindgren's opinion was inconsistent with Plaintiff's physical examination findings. Tr. 28-29. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ concluded that Dr. Lindgren's opinions were inconsistent with the longitudinal record of Plaintiff's physical examination findings of his hip, back, shoulder, and wrists. Tr. 28-29. The ALJ found Plaintiff's examination findings did not "indicate any significant worsening of his physical functioning in recent years" and showed a "generally normal range of motion." Tr. 25-26. However, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan*, 246 F.3d at 1207–08 (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). The ALJ is not permitted to "cherry pick" from mixed evidence to support a denial of benefits. *Garrison v. Colvin*, 759 F.3d 995, 1017 n.23 (9th Cir. 2014). As discussed *infra*, the ALJ cited portions of the record showing milder examination findings while the longitudinal record showed more

mixed results, leading to a characterization of the medical evidence as a whole that is not supported by substantial evidence.

The ALJ identified several pieces of evidence regarding Plaintiff's hip that the ALJ characterized as showing no "significant worsening of his physical functioning in recent years." Tr. 25-26 (citing Tr. 367, 375, 409, 422, 497, 557); Tr. 28. Although the ALJ identified examination notes that the ALJ characterized as showing improvement or mild results, a review of the record as a whole reveals substantial evidence that Plaintiff's functioning was worsening. For example, the ALJ identified Plaintiff's full hip strength and 100 degrees of flexion in Plaintiff's right hip in a December 5, 2013, physical therapy examination note as evidence that Plaintiff's hip impairment was less severe than alleged. Tr. 25 (citing Tr. 373-76). However, the same examination also showed a positive log roll test, positive McCarthy test, positive FADIR test, positive posterior impingement hip test, positive FABER test, and a pain response to hip circumduction. Tr. 376. The ALJ similarly identified Plaintiff's exhibition of 100 degrees of flexion in his right hip during a May 13, 2014, examination as evidence that Plaintiff's hip function was greater than alleged. Tr. 25 (citing Tr. 557-59). However, a review of the entire chart note indicates that Plaintiff's physical examination yielded positive pain responses to physical examination, a positive log roll test, positive scour test, and positive FABER test. Tr. 558-59. The ALJ again selectively identified Plaintiff's

increased hip strength during an August 7, 2014, examination, although the same examination also showed positive pain responses, positive log roll test, positive scour test, and positive FABER test. Tr. 25 (citing Tr. 553-56). The ALJ's characterization of Plaintiff's physical examination results regarding his hip is not supported by substantial evidence.

The ALJ similarly cherry-picked evidence of Plaintiff's back and shoulder impairments, which the ALJ characterized as not indicating "any significant worsening" and demonstrating "generally normal range of motion." Tr. 25-26. The ALJ cited to one examination report where Plaintiff exhibited a normal range of motion in his back. Tr. 26 (citing Tr. 617). However, the longitudinal record of back pain evidence also contains an examination report documenting decreased range of motion in Plaintiff's back. Tr. 611-13. In discussing Plaintiff's shoulder impairments, the ALJ cited to an April 8, 2015 examination note showing 170 degrees flexion in the right shoulder and normal upper extremity strength as evidence that Plaintiff's shoulder impairment cause no more than "minimal deficits." Tr. 26 (citing Tr. 625-26). While the ALJ did acknowledge that this examination note documented rotator cuff laxity, the examination note also mentioned Plaintiff also exhibited a positive Hawkins test and positive Neer's test. Tr. 625. The ALJ's selectively discussed the medical evidence. The Court's

independent review of the record as a whole reveals that the ALJ's characterization of the medical evidence is not supported by substantial evidence.

The ALJ discredited Dr. Lindgren's opinion as being inconsistent with Plaintiff's longitudinal treatment record and examination findings, which the ALJ characterized as "mild," "normal," and "showing improvement." Tr. 25-26, 28. However, the ALJ's characterization of the record is not supported by substantial evidence. Accordingly, inconsistencies between Dr. Lindgren's opinion and the ALJ's characterization of the longitudinal medical evidences does not provide a specific and legitimate reason to discredit Dr. Lindgren's opinion.

c. *Daily Activities*

The ALJ found Dr. Lindgren's opinion was inconsistent with Plaintiff's ability to care for his young daughter. Tr. 28-29. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). The ability to care for young children without help has been considered an activity that may undermine claims of totally disabling pain. *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001). However, the Ninth Circuit has recently clarified that an ALJ must make specific findings before relying on childcare as an activity inconsistent with disabling limitations. *Trevizo v. Berryhill*, 862 F.3d 987, 998 (9th Cir. 2017).

ORDER - 17

Here, the ALJ concluded that Plaintiff's reports of "being a single father to a young child" were inconsistent with the level of impairment Dr. Lindgren opined. Tr. 28-29. Plaintiff testified that he did not have custody of his daughter and that he had visitation with her for four hours per week. Tr. 57-58; *see also* Tr. 357. The ALJ observed Plaintiff "stated that he occasionally cared for his daughter, with whom he would read and play games." Tr. 27. However, the ALJ failed to explain how Plaintiff's ability to occasionally read and play games with his daughter for a period of up to four hours per week was inconsistent with the physical limitations Dr. Lindgren opined. Without further explanation of how this limited activity was inconsistent with the level of impairment Dr. Lindgren opined, the ALJ's finding is not supported by substantial evidence.

### d. Response to Treatment

The ALJ found Dr. Lindgren's opinion was inconsistent with Plaintiff's response to treatment. Tr. 28. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). The ALJ identified several instances where the record showed Plaintiff's symptoms showed a positive response to treatment interventions. Tr. 25-27; *see* Tr. 552 (Plaintiff

reported increased strength in his right hip after physical therapy); Tr. 557 (Plaintiff reported cortisone injection "significantly helped his pain"); Tr. 568 (Plaintiff showed improvement in right hip range of motion after one month of physical therapy); Tr. 626 (Plaintiff reported 85% improvement in shoulder pain after a cortisone injection). Plaintiff fails to challenge this finding specifically. ECF No. 15 at 8-11, 19-20. Thus, any challenge to those findings is waived.[4] *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998).

Overall, the ALJ's evaluation of Dr. Lindgren's opinion is not supported by substantial evidence. The Court remands this case for the ALJ to reconsider the medical opinion evidence.

_____

[4] Although the Court notes on independent review of the record that evidence shows some of Plaintiff's treatments were not effective over time. *See, e.g.,* Tr. 373 (hip pain aggravated by physical therapy and worsened following hip injection); Tr. 505 (shoulder pain aggravated by physical therapy); Tr. 629 (pain relief from shoulder injection lasted only a few hours); Tr. 632 (Plaintiff's hip arthroscopy did not cause significant improvement).

## 2. *Additional Assignments of Error*

Plaintiff challenges the ALJ's consideration of additional medical opinions and Plaintiff's subjective symptom testimony. The ALJ's findings regarding other medical opinions and Plaintiff's symptom testimony are similarly impacted by the ALJ's selective interpretation of the longitudinal medical evidence. *See* Tr. 25-30. Accordingly, the ALJ is instructed on remand to readdress the medical evidence and Plaintiff's symptom testimony in a manner consistent with this opinion.

## B. Remand

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 15 at 20. To do so, the Court must find that the record has been fully developed and further administrative proceedings would not be useful. *Garrison*, 759 F.3d at 1019-20; *Varney v. Sec'y of Health and Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988). But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

Here, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Even if the ALJ were to fully credit Plaintiff's symptom testimony and the challenged medical

evidence, the evidence would still present outstanding conflicts for the ALJ to resolve. Specifically, Dr. Hale opined Plaintiff could perform light work with additional functional limitations, and the ALJ gave Dr. Hale's opinion significant weight. Therefore, further proceedings are necessary for the ALJ to reconsider the medical opinion evidence, including taking testimony from a medical expert. On remand, the ALJ should also reconsider the credibility analysis. Finally, the ALJ should reassess the RFC, and reconsider the remaining steps in the sequential analysis.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 15, is GRANTED.

2. Defendant's Motion for Summary Judgment, ECF No. 23, is DENIED.

3. The Court enter JUDGMENT in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and CLOSE THE FILE.

DATED August 20, 2018.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 22